UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

DARLENE GRIFFIN, ET AL                    CIVIL ACTION

VERSUS                                    NO. 6:17-190

SENIOR LIVING PROPERTIES, LLC
d/b/a LINDALE HEALTHCARE CENTER

## ORDER AND REASONS

Before the Court is "Defendant Senior Living Properties, LLC D/B/A Lindale Healthcare Center's Motion to Compel Arbitration and Stay Proceedings." Rec. Doc. 18. Plaintiff timely filed a response memorandum. Rec. Doc. 19. Defendant then filed a reply memorandum. Rec. Doc. 20. For the reasons discussed below,

**IT IS ORDERED** that the motion (Rec. Doc. 18) is **GRANTED**.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case arises out of alleged violations of the Fair Labor Standards Act ("FLSA"). Rec. Doc. 1 at ¶ 1. Specifically, Darlene Griffin ("Griffin") worked for Senior Living Properties, LLC, doing business as Lindale Healthcare Center ("Defendant"). *Id.* at ¶¶ 1-3. In her original complaint, Griffin alleged that Defendant repeatedly violated FLSA Sections 6 and 7 by failing to pay her and similarly situated employees for the hours worked and by failing to pay her for overtime hours worked at a rate not less than one and one-half times the regular hourly rate of pay. *Id.* at

1

¶ 8. She accordingly requested "her unpaid wages, overtime, liquidated damages, all equitable relief, attorney fees, and litigation expenses/costs, including expert witness fees and expenses." *Id.* at ¶ 1.

On August 1, 2017, Plaintiff filed an amended complaint adding Tara Kumpe ("Kumpe") as a Plaintiff. Rec. Doc. 13 at ¶ 2.

Both Griffin and Kumpe signed arbitration agreements whereby they agreed "to voluntarily promise and irrevocably agree (after completing the facilities [sic] Problem Resolution Procedure) to arbitrate any dispute or claim arising or related to employment . . . ." Rec. Docs. 18-1 at 3; 18-2 at 3. The agreement further provides that it applies to "claims by employee[s] against the Company . . . including . . . [a]ny federal . . . laws . . . providing for the collection or recovery of unpaid wages, minimum wage or overtime pay, or prohibiting retaliation for making a wage claim." *Id.*

## PARTIES' CONTENTIONS

In response to Defendant's motion to compel arbitration, Plaintiffs argue (1) Defendant waived their right to compel arbitration by failing to timely raise the issue; (2) the agreements contain a mediation provision and "[n]either party has [the] right to compel arbitration when [the] agreement expressly requires mediation as a precondition for requesting arbitration and neither party has requested mediation"; and (3) the agreement

is unconscionable and therefore cannot be enforced. Rec. Doc. 19 at 3.

## LAW AND ANALYSIS

"Arbitration is favored in the law." *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 526 (5th Cir. 2000) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)). Section 2 of the Federal Arbitration Act ("FAA") provides that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.[1]

According to the courts, § 2 "is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24 (citing § 2). It was "Congress's clear intent . . . to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Id.* at 22. Essentially, the FAA

---

[1] Thus, as a threshold matter, the FAA applies where the transaction at issue involves commerce. *See, e.g. New Orleans Cold Storage & Warehouse Co., Ltd. v. Grenzebach Corp.*, No. 15-6642, 2016 WL 279012, at *4 (E.D. La. Jan. 22, 2016) (noting that "[t]he Fifth Circuit has held that '[c]itizens of different states engaged in performance of contractual operations in one of those states are engaged in a contract involving commerce under the FAA.'") (quoting *Mesa Operating Ltd. P'ship v. La. Intrastate Gas Corp.*, 797 F.2d 238, 243 (5th Cir. 1986) (citing § 2)). Here, the parties do not dispute this threshold issue.

3

"establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration" (*id.* at 24-25) and "where the contract contains an arbitration clause, there is a presumption of arbitrability" (*Tittle v. Enron Corp.*, 463 F.3d 410, 418 (5th Cir. 2006) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)) (citing *Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 471 (5th Cir. 2002) (noting that any doubts regarding arbitrability should be resolved in favor of arbitration) (citing *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984)))).

Nonetheless, § 2 contains a savings clause that provides that an agreement to arbitrate is "enforceable, <u>save upon such grounds as exist at law or in equity for the revocation of any contract</u>." § 2 (emphasis added). Accordingly, to determine if the parties agreed to arbitrate, the court should consider "(1) whether a valid agreement to arbitrate between the parties exist; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1065 (5th Cir. 1998) (citing *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996); *In re Hornbeck Offshore (1984) Corp.*, 981 F.2d 752, 754 (5th Cir. 1993); *Midwest Mech. Contractors, Inc. v. Commonwealth Constr. Co.*, 801 F.2d 748, 750 (5th Cir. 1986)); *see also Jones v. Haliburton Co.*, 583 F.3d 228,

4

233-34 (5th Cir. 2009) (citations omitted).[2] "If both questions are answered in the affirmative, our court then asks whether 'any federal statute or policy renders the claims nonarbitrable.'" *Jones*, 583 F.3d at 234 (citations omitted).

If a court is satisfied that a dispute is subject to arbitration pursuant to a written arbitration agreement, the court shall, on application of one of the parties, "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ." 9 U.S.C. § 3.

## A. DID DEFENDANT WAIVE THE RIGHT TO COMPEL ARBITRATION?

Parties may waive their right to arbitrate a dispute by "[1] substantially invok[ing] the judicial process [2] to the detriment or prejudice of the other party." *Nicholas v. KBR, Inc.*, 565 F.3d 904, 907 (5th Cir. 2009) (quoting *Miller Brewing Co. v. Fort Worth Distrib. Co.*, 781 F.2d 494, 496-97 (5th Cir. 1986)). A party may "invoke the judicial process" by "initially pursuing litigation of claims then reversing course and attempting to arbitrate those claims" or by otherwise taking "some overt act in Court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration." *Id.* (quoting *Gulf Guar. Life*

---

[2] As to the first prong, courts "apply 'ordinary contract principles.'" *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003) (quoting *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1073, *opinion supplemented on denial of reh'g,*, 303 F.3d 570 (5th Cir. 2002)); *see also Webb*, 89 F.3d at 258. As to the second prong, neither party argues that Plaintiffs' FLSA claims do not fall within the scope of the arbitration agreement.

*Ins. Co. v. Conn. Gen. Life Ins. Co.*, 304 F.3d 476, 484 (5th Cir. 2002)). A party is prejudiced by such an invocation if it resulted "in delay, extra expense, and/or damage to his legal position." *Cochran v. Nabors Drilling Techs. USA Inc.*, No. 16-1633, 2017 WL 2427794, at *2 (W.D. La. June 2, 2017) (citing *In re Mirant Corp.*, 613 F.3d 584, 591 (5th Cir. 2010)). Three factors "are particularly relevant to the prejudice determination:  (1) whether discovery occurred relating to arbitrable claims; (2) the time and expense incurred in defending against a motion for summary judgment; and (3) a party's failure to timely assert its right to arbitrate." *Petroleum Pipe Americas Corp. v. Jindal Saw, Ltd.*, 575 F.3d 476, 480 (5th Cir. 2009) (quotation marks omitted) (citing *Republic Ins. Co. v. PAICO Receivables, LLC*, 383 F.3d 341, 346 (5th Cir. 2004)).

Plaintiffs argue that Defendant waived the right to compel arbitration by failing to raise the issue prior to filing its motion to dismiss and answer and otherwise participating in this Court's scheduling conference. Rec. Doc. 19 at 1-3. Defendant responds that its motion to dismiss did not seek a ruling on the merits and that they filed the instant motion and an amended answer on August 7, 2017, approximately one week after Plaintiffs amended the complaint to add Krumpe on July 31, 2017. Rec. Doc. 20 at 2.

Defendant did not pursue this litigation or otherwise take some action that evinced an intent to resolve the dispute in court

rather than through arbitration. Defendant merely acted to defend itself. Even though judicial resources could have been saved had Defendant first moved to compel arbitration, the Court cannot find compelling evidence that Defendant "invoked" the judicial process. As soon as Defendant discovered the arbitrability of this dispute, it filed the instant motion. Plus, "[d]elay by itself 'falls far short' of establishing a waiver." *Tristar Fin. Ins. Agency, Inc. v. Equicredit Corp. of Am.*, 97 F. App'x 462, 465 (5th Cir. 2004) (quoting *Texaco Expl. & Prod. Co. v. AmClyde Engineered Prod. Co.*, 243 F.3d 906, 912 (5th Cir. 2001)).

Further, Plaintiffs fail to argue that they were prejudiced by Defendant's participation in this litigation. Defendant, however, argues that (1) there has been no delay; (2) Plaintiffs have not incurred any extra expense; (3) Plaintiffs' legal position has not been damaged; (4) except for the mandatory initial disclosures, there has been no discovery; and (5) it has not moved for summary judgment. Rec. Doc. 20 at 3-4. While there was a short delay and Plaintiffs did have to respond to Defendant's motion to dismiss, there is insufficient evidence of prejudice to find that Defendant waived its right to compel arbitration. *See, e.g., Steel Warehouse Co. v. Albalone Shipping Ltd. of Nicosai*, 141 F.3d 234, 238 (5th Cir. 1998) (finding no waiver where the party moving to compel arbitration did not do "much other than defend themselves," had "not escalated t[he] case," and had not "showered [the non-

7

movant] with interrogatories and discovery requests"); *Tenneco Resins, Inc. v. Davy Int'l, AG*, 770 F.2d 416, 420-21 (5th Cir. 1985) (finding no waiver even though the party moved to compel arbitration eight months into the litigation, after participating in discovery, because the movant cited the arbitration clause in its answer to the original complaint).

**B. IS MEDIATION A PRECONDITION TO ENFORCEMENT OF THE AGREEMENT?**

Plaintiffs argue that the arbitration agreement explicitly provides that the parties agree to arbitrate "after completing the facilities [sic] Problem Resolution Procedure" and that, because neither party has completed that procedure, neither party may compel arbitration. Rec. Doc. 19 at 3.

Defendants respond that the "Problem Resolution" procedure is permissive, not mandatory, and may only be initiated by the employee. Rec. Doc. 20 at 4; *see also* Rec. Doc. 20-1 at 4 (the "Problem Resolution" section of the employee handbook explains that "[i]f employees disagree with established rules . . . or practices, they can express concern through the problem resolution procedure" and that "[t]he employee may discontinue the procedure at any step") (emphasis added).

In the only case cited by Plaintiffs, the arbitration agreement provided for a four-step program: "(1) talking about problems one-on-one with a store manager, (2) formal review by the

corporate human resources department, (3) mediation, and (4) final and binding arbitration." *In re Pisces Foods, L.L.C.*, 228 S.W.3d 349, 351 (Tex. App. 2007). The agreement emphasized that only "[i]f you have a work-related problem . . . <u>that could not be settled through Steps 1, 2 or 3 of the Program</u>, you may request arbitration." *Id.* (emphasis added). The court consequently determined that "mediation must occur and fail before arbitration is an option under the company's mandatory program." *Id.*

Here, Defendant correctly notes that the Problem Resolution procedure is not mandatory, and further Plaintiff elected to bypass that employee right by initiating the captioned lawsuit. Therefore, it is distinguishable from the agreement in *Pisces Foods* and is not a precondition to arbitration.

**C. IS THE AGREEMENT UNCONSCIONABLE?**

Plaintiffs argue that the agreement is unconscionable for three reasons.

First, they argue that it creates a statute of limitations that conflicts with the FLSA limitations periods. Rec. Doc. 19 at 3-5. The agreement provides that "[t]he facility and employee agree accrued claims arising from acts that occurred more than one year before the beginning of the facility's 'Problem Resolution Procedure' shall be waived for all purposes." *See* Rec. Doc. 18-1 at 4. The FLSA, of course, provides for either a two- or three-

year limitations period, depending on the willfulness of the violation. 29 U.S.C. § 255(a).

In response, Defendant explicitly "waive[d] the one-year limitations period" in the agreement and agreed to "instead apply the statute of limitations applicable to FLSA claims as set forth in 29 U.S.C. section 255(a) in this case." Rec. Doc. 20 at 5. Accordingly, the one-year limitations period in the arbitration agreement is stricken and this issue is moot.

Second, Plaintiffs argue that the agreement impermissibly limits discovery. Rec. Doc. 19 at 5. The agreement provides:

> Before the hearing, each party shall have the right to take one deposition of the other party, as well as one deposition of any expert witness designated by the other party. The parties may request permission from the arbitrator to take the deposition of not more than two (2) other persons not previously listed. The parties may serve on each other one set of interrogatories, not more than five (5) in number, including subparts, and not more than three (3) requests for production of documents, including subparts.

Rec. Doc. 18-1 at 4. Plaintiffs argue that "[a]n arbitration agreement that provides for insufficient discovery to allow the party a fair opportunity to present his or her claims is unconscionable, and thus unenforceable." Rec. Doc. 19 at 5.

Defendant responds that the parties agreed to streamline discovery, but that "each party is permitted to serve interrogatories, serve requests for production and take

depositions" and that "the limitations apply equally to both parties." Rec. Doc. 20 at 7.

Plaintiffs cite to a single case in support, *Walker v. Ryan's Family Steak Houses, Inc.*, 400 F.3d 370 (6th Cir. 2005). However, the court in that case determined that there was inadequate consideration for the arbitration agreements, the plaintiffs did not knowingly and voluntarily execute the agreements, the parties did not mutually assent to the agreements, the chosen arbitral forum was not neutral, and that limiting the parties to just one deposition as of right and additional depositions at the discretion of the biased panel was further evidence of unfairness. *Id.* at 378-88. The court explained that

> the opportunity to undertake extensive discovery is not necessarily appropriate in an arbitral forum, the purpose of which is to reduce the costs of dispute resolution. Indeed, when parties enter arbitration agreements at arms-length they typically should expect that the extent of discovery will be more circumscribed than in a judicial setting. But parties to a valid arbitration agreement also expect that neutral arbitrators will preside over their disputes regarding both the resolution on the merits and the critical steps, including discovery, that precede the arbitration award. A structural bias in the make-up of the arbitration panel . . . can be just as prejudicial as arbitral bias in the final decision on the merits. Such is the case here, providing an additional basis to conclude that [the] arbitration scheme does not allow for the effective vindication of Plaintiffs' FLSA claims.

*Id.* at 387-88.

Here, discovery may be limited, but there is no allegation that Plaintiffs will be subject to a non-neutral forum. The *Walker*

court specifically recognized that parties may contract to limit discovery during arbitration. The Court finds nothing unconscionable about the limits agreed to by the parties in this case. "[T]he mere fact that discovery in arbitration proceedings 'might not be as extensive as in federal courts' does not render those agreements invalid; by agreeing to arbitrate, a party simply 'trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration.'" *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 298 (5th Cir. 2004) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991)). Plaintiffs have failed to show that the discovery provisions at issue will not provide them a fair opportunity to present their claims. *Id.* at 298-99.

Finally, Plaintiffs argue that the agreement permits Defendant to collect attorneys' fees, even though the FLSA provides only that prevailing plaintiffs may collect such fees. Rec. Doc. 19 at 5-6. The FLSA explicitly provides that the court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). The instant agreement provides that "[i]f either party pursues a covered claim against the other by any action . . . other than the arbitration provision . . . the responding party shall be entitled to . . . recovery of all cost[s], losses, attorneys['] fees . . . relating to such

12

action." Rec. Doc. 18-1 at 4. Plaintiffs argue simply that because "[t]he FLSA does not provide attorney[s'] fees for the defendant, [the agreement] is unconscionable and unenforceable." Rec. Doc. 19 at 6.

Defendant responds that the fees provision does not permit it "to recover its fees should it prevail on Plaintiffs' FLSA claims in arbitration," but is limited "to the recovery of fees and costs related to enforcing [Defendant's] rights to arbitration." Rec. Doc. 20 at 7. Even if the Court finds the provision unconscionable, Defendant argues that the Court should simply sever the fees provision. *Id.* (citing *Jallow v. Convergenz, LLC*, No. 15-219, 2015 WL 12831722 (S.D. Tex. Nov. 4, 2015); *Long v. BDP Int'l, Inc.*, 919 F. Supp. 2d 832 (S.D. Tex. 2013); Rec. Doc. 18-1 at 4 (providing that "[i]f any provision of this Agreement is ruled invalid, the rest and remainder shall survive and be enforced")).

We find that the fees provision permits recovery of fees associated with compelling arbitration, not those associated with the underlying FLSA claims.[3] The court in *Escalera v. JD Byrider*

---

[3] To the extent that this, or any other, provision may be interpreted differently, the parties are reminded that the arbitration agreement is valid so long as it "does not waive the substantive rights and remedies the statute affords and the arbitration procedures are fair, such that the employee may effectively vindicate his statutory rights." *Coronado v. D.N.W. Houston, Inc.*, No. 13-2179, 2015 WL 5781375, at *7 (S.D. Tex. Sept. 30, 2015), *appeal dismissed sub nom.* (Oct. 30, 2015) (quotation marks and citations omitted). "Arbitration provisions relating to federal statutory claims are not enforceable when a party is forced to forgo the substantive rights afforded by the statute, as opposed to merely submitting to resolution in an arbitral, rather than a judicial, forum." *Id.* (quotation marks and citations omitted). In other words, by

*Dfw-Texas, Incorporated* considered a similar provision. No. 14-817, 2014 WL 12588317, at *2 (N.D. Tex. June 16, 2014). It provided that any party who failed to arbitrate "shall . . . be taxed by the arbitrator(s) with all of the costs, including reasonable attorneys' fees, of the other party who had to resort to any action compelling arbitration . . . ." *Id.* The court determined that the provision was not unconscionable because (1) the provision applied equally to both parties; (2) "Texas courts have allowed an award of attorneys' fees where one party has breached an arbitration agreement by litigating a claim"; and (3) "the provision only applies if a party *fails* to arbitrate; if [the plaintiff] had initiated his FLSA claim in an arbitrable forum rather than in court, he would not have incurred any costs at all. Thus, the justification for finding a fee-shifting agreement unconscionable – that large arbitration costs may preclude a litigant from pursuing his claims through arbitration – does not apply here." *Id.* at *3 (citations omitted). Therefore, the fees provision is not unconscionable and does not render the arbitration agreement unenforceable.

For the reasons assigned above,

---

submitting their claims to arbitration, Plaintiffs are not waiving their statutory rights.

**IT IS ORDERED** that Defendant's motion to compel arbitration (Rec. Doc. 18) is **GRANTED**;

**IT IS FURTHER ORDERED** that the case is stayed and **ADMINISTRATIVELY CLOSED**. No later than thirty (30) days after the arbitrator's final decision, either party may file a motion to reopen for good cause. The arbitrator's decision shall be attached to any such motion. If the case is disposed of through arbitration, or any other means, Plaintiffs shall promptly file an appropriate motion to dismiss within 30 days of disposition. Failure to timely comply with this order may lead to sanctions, including dismissal of clams, without further notice.

New Orleans, Louisiana, this 29th day of August, 2017.

SENIOR UNITED STATES DISTRICT JUDGE